**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **KONVIN ASSOCIATES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 04 C 2544** |
| | ) | |
| **EXTECH/EXTERIOR TECHNOLOGIES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Konvin Associates has sued Extech/Exterior Technologies contending that Extech's

standing seam roofing system infringes on Konvin's United States patent, number 6,164,024 (the

"'024 patent"). On April 6, 2005, the Court conducted a claim construction hearing and in an

oral ruling, construed disputed terms in the patent. Extech has moved for summary judgment,

arguing that the asserted claims in the patent are invalid or, alternatively, that its system does not

infringe the patent. Konvin has filed a cross motion for summary judgment on the infringement

issue only. For the following reasons, the Court grants Extech's motion in part and denies it in

part and denies Konvin's motion.

**Facts**

Konvin's invention is a unique type of standing seam roofing system. It allows

contractors to securely install translucent roofing panels, like those used in skylights, in

buildings located in areas that experience hurricane force winds. Konvin's system uses metal

clips and U-shaped plastic pieces to attach the panels (also called glazing panels) to a roof. The

glazing panels have narrow "flanges" – called seam flanges – which extend upward less than an

inch along the panels' edges. The seam flanges fit underneath one side of an "I" shaped metal clip that is screwed onto a roof. A U-shaped plastic piece, called a batten, fits over the top of the metal clip and clasps snugly into teeth located on the sides of the seam flanges. In windy conditions, the top of the metal clip and the batten prevent the panels from being blown away. The system is depicted below:



Konvin's president, Moshe Konstantin, claims that the need for this invention arose in the wake of Hurricane Andrew, after the state of Florida passed regulations requiring all roofing panels to be hurricane resistant. At that time, according to Konstantin, there was no standing seam roofing system on the market that employed glazing panels strong enough to satisfy these regulations. Once Konvin began selling its hurricane resistant system, it became enormously successful.

The relevant claims in the '024 patent describe Konvin's system as follows:

1.     A glazing panel system for use with rafters and purlins and having light transmission to withstand forces of approximately 50 psf or 100 mph wind speeds, said glazing system comprising: . . .

a top flange on the retention clip abutting the top sides of each of said adjacent seam flanges over a distance about equal to or greater than the length of the base to retain the glazing panels against said forces, the central web having side bearing surfaces that are substantially flat and extend continuously between the top flange and base of the clip with the bearing surfaces having a predetermined height sized to substantially match that of the exterior faces of the seam flanges between the top sides of the seam flanges and the bottom sheet of the panels to allow the exterior faces to bear flush against the web bearing surfaces continuously therealong between the top flange and base of the clip.

5.     A glazing panel system in accordance with claim 1 wherein: a second web is spaced from the first web, and is positioned parallel to and spaced from the first web on the retention clip; and the spaced webs separating adjacent upstanding seam flanges further apart at the seam than the thickness of a single web.

13.     A glazing panel system having light transmission to withstand forces of approximately 50 psf or from winds in excess of 50 mph and for use with rafters and purlins, said glazing system comprising: . . .

at least one retention clip . . . having a base for being secured to the purlins . . . ;

a top flange on the retention clip abutting the top sides of each of said adjacent seam flanges over a distance about equal to or greater than the width of the rafter to retain the snap-fit detents on the seam flanges from peeling loose from the detents on the batten members to withstand 50 psf or winds in excess of 50 mph with the central web having a predetermined height to position the top flange to engage tightly against the top sides of the adjacent seam flanges so that said engagement provides the primary resistance against pull forces tending to separate the tooth snap-fit detents of the batten members and seam flanges and the batten joined panels off from the framework of purlins and rafters.

15.     A clip for architectural panel members having upstanding seam flanges connected by a batten-type joining connector, the clip comprising:

a central web portion of the clip having side bearing surfaces for being disposed between adjacent panel members and extending between connected seam flanges thereof;

a base integral with the central web portion and having a predetermined length; and

a top flange which extends integrally transverse to the base length on top of the central web portion continuously across the web portion to provide the top flange with a transverse width with the central web portion having a predetermined height sized so that the integral top flange engages over and tightly against one adjacent panel seam flange on one side of the clip central portion to stiffen the connected panel members.

20.     The retaining clip of claim 15 wherein the central web portion includes a pair of spaced web portions with each web portion having an outer bearing surface for engaging a panel abutted thereagainst with the bearing surfaces of the pair of web portions being spaced at a predetermined distance.

21.     The retaining clip of claim 20 wherein the pair of spaced webs define an upwardly, opening channel therebetween to receive a depending tongue of a batten member.

'024 patent, col. 11-14.

Extech contends that the '024 patent is a combination of references contained in prior art, including one that is described in the '024 patent. As depicted in figure 13, reproduced below, that particular prior art reference is a glazing panel system identical to the Konvin system, except that the top flanges of the I-shaped metal clips do not abut the top sides of the seam flanges over a distance about equal to the length of the clip's base, and the clip does not have portions of non-uniform thickness. '024 patent, drawing sheet 5 of 5.



The prior art also includes a number of other standing seam roofing systems that are designed to operate in a manner similar to the system described in the '024 patent. Though these systems are designed for use with metal panels, they disclose the elements of the '024 patent not disclosed by the figure above, namely, a metal clip that abuts the top sides of the seam flanges over a distance about equal to the length of the clip's base and a clip that has portions of non-uniform thickness.

## Discussion

Summary judgment may be granted only when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In considering a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party and draws reasonable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Before proceeding to the substantive issues presented by the summary judgment

motions, the Court must first resolve a procedural matter. Extech has asked the Court to strike expert testimony contained in an affidavit submitted by Moshe Konstantin because he was not identified as an expert witness under Federal Rule of Civil Procedure 26(a)(2)(A). Konvin has raised the same objection to an affidavit submitted by William P. Voegele.

The parties clearly violated Rule 26(a)(2)(A) by failing to disclose Konstantin and Voegele as expert witnesses prior to the deadline established by the Court for making such disclosures. The remedy for such a violation, however, is not necessarily the exclusion of a witness' testimony. Rule 37(c) provides that a party is not permitted to use evidence disclosed in violation of Rule 26(a) "unless such failure is harmless." In the absence of prejudice to an opposing party, therefore, a discovery violation does not merit the wholesale exclusion of evidence.

Neither party contends that admitting the Konstantin and Voegele affidavits would be unfairly prejudicial. Without any indication that either side was harmed by these discovery violations, the Court declines to exclude the evidence. *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000). To the extent the parties have made specific objections to the affidavits because they contain inadmissible hearsay or are not based on personal knowledge, the Court addresses the objections in the course of the discussion below.

### 1.    Invalidity

Extech maintains that certain claims in the '024 patent are invalid because they are indefinite, anticipated by prior art, or obvious. Because a patent is presumed valid, 35 U.S.C. § 282, Extech must establish invalidity by clear and convincing evidence. *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1238-39 (Fed. Cir. 2003).

### a.    Indefiniteness

Extech argues that claims 5 and 21 are invalid because they are indefinite under 35 U.S.C. § 112, ¶ 2.  That statute provides that "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."  35 U.S.C. § 112, ¶ 2.  The Federal Circuit has held that this provision contains two requirements:  "first, [the claim] must set forth what 'the applicant regards as his invention,' and second, it must do so with sufficient particularity and distinctness, i.e., the claim must be sufficiently 'definite.'" *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1348 (Fed. Cir. 2002) (quoting *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1377 (Fed. Cir. 2000)).  "[T]he inquiry under section 112, paragraph 2, . . . focuses on whether the claims, as interpreted in view of the written description, adequately perform their function of notifying the public of the patentee's right to exclude."  *Solomon*, 216 F.3d at 1379.  In *Allen*, the Federal Circuit held a particular claim indefinite because it recited a "steering box" that pivoted in a plane perpendicular to the "biaxial plane," though the specifications stated that the steering box could not pivot in a plane perpendicular to the biaxial plane.  *Id.* at 1349.

Extech contends that claims 5 and 21 of the '024 patent are indefinite under this statute because they are inconsistent with the independent claims from which they depend, claims 1 and 15, respectively.  Though parties making this type of argument ordinarily argue that improper dependent claims violate 35 U.S.C. § 112, ¶ 4 ("A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers."), *see Pfizer, Inc. v. Ranbaxy Labs Ltd.*, — F.3d —, 2006 WL 2137244, *6 (Fed. Cir. 2006), the Court can also imagine a dependent claim that violates § 112, ¶ 2.  A claim, like the one in *Allen*, that does not

adequately notify the public regarding the patentee's right to exclude because it contains an internal contradiction presumably would fall into this category.

The Court proceeds to examine the claims in question. Claim 1 recites a "central web having side bearing surfaces that are substantially flat . . . to allow the exterior faces [of the seam flanges] to bear flush against the web bearing surfaces." It also recites "a central web . . . positioned between adjacent seam flanges." Claim 5 recites a "glazing panel system in accordance with claim 1 wherein: a second web is spaced from the first web, and is positioned parallel to and spaced from the first web on the retention clip."

Extech argues that claim 5 is indefinite because it cannot be "in accordance with claim 1" as written. Specifically, Extech contends that claim 5 does not recite "a central web positioned between adjacent seam flanges," but rather recites two webs, each of which is adjacent to a seam flange on one side and to a second web on the other side. The Court disagrees with Extech's characterization of claims 1 and 5. The '024 patent repeatedly uses the term "central web" to refer to both a single piece of metal and two pieces of metal. *See* '024 patent, col. 11, lines 1-3 (reciting "a central web portion of the clip, with the web portion having right and left vertical sections"); col. 13, line 8 (reciting "the central web comprises a pair of spaced vertical webs"). It then uses the term "web" to refer to each piece of metal. *See id.,* col. 13, line 8. Consistent with this understanding, the term central web in claim 1 can include one or more webs, or thin pieces of metal. Claim 5 then properly narrows claim 1 by disclosing a central web that has only two webs. For this reason, a jury reasonably could find that claim 5 is valid.

Claim 15 recites "a top flange which extends integrally transverse to the base length on top of the central web portion continuously across the web portion." Claim 21, which

incorporates claim 15 and claim 20, recites "a pair of spaced web portions . . . wherein the pair of spaced webs define an upwardly, opening channel thereby to receive  a depending tongue of a batten member."  Extech argues that claim 21 is indefinite because it cannot incorporate the elements of claim 15 as it is written.  Specifically, Extech maintains that claim 21 recites top flanges that – because of the upwardly opening channel – are discontinuous along the top of the central web portion.  Konvin responds that claim 21 does recite a top flange extending continuously across the top of the web portion in a direction transverse to the length of the base.  The Court disagrees.  As the Court discusses in more detail in the infringement section of this ruling, the top flange of claim 21 is plainly interrupted in the middle of the clip by an upwardly opening channel.  Accordingly, it does not extend continuously across the web in a direction transverse to the length of the base.

Because claims 21 cannot both incorporate the elements of claim 15 and recite a clip with an "upwardly, opening channel," claim 21 does not adequately notify the public of Konvin's right to exclude.   For this reason, no jury reasonably could find that claim 21 is valid under 35 U.S.C. § 112, ¶ 2.

### b.    Anticipation

Extech next argues that claims 15, 20, 21, and 27 of the '024 patent are invalid as anticipated under 35 U.S.C. § 102.  To succeed on its anticipation defense, Extech must prove by clear and convincing evidence that every limitation of the asserted claims of the '024 patent is contained in a single prior art reference.  *See Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1374 (Fed. Cir. 2001).  "To anticipate, the reference must also enable one of skill in the art to make and use the claimed invention."  *Id.*  If an independent claim is not anticipated

by prior art, then its dependent claims, which necessarily include the limitations of the independent claim, are not anticipated either. *See Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1296 (Fed. Cir. 2002).

"Typically, testimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference." *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2003); *see also Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1369 (Fed. Cir. 2003). The only exception to this rule seems to be when the patent is so technologically simple, or the prior art so perfectly matches the patent in question, that expert testimony is unnecessary to prove that the prior art disclosed the elements of the invention to one skilled in the art. *See Dayco Prods.*, 329 F.3d at 1369. That exception, if it exists at all, is not applicable in this case.

Extech argues that claim 15 is anticipated by seven different United States patents: 453,470; 2,725,832; 2,855,871; 4,189,881; 4,001,995; 5,737,892; and 5,187,911. It also contends that claim 15 is anticipated by an unpatented standing seam roofing system called the IMETCO Series 300 B System. In support of its argument, Extech provides a chart that recites each element of claim 15 and describes where the element can be found in the prior art. The chart does not cite any expert testimony. In fact, the only expert testimony that Extech cites is a report offered by Dr. Roger LaBoube, in which he states, without elaboration, that certain of the abovementioned patents "include[] all of the limitations of claim 15." Def. Invalidity Ex. M at 12. This testimony falls far short of the evidence necessary to support a finding of anticipation on summary judgment. *See Schumer*, 308 F.3d at 1316 ("It is not . . . the task of the district

court, to attempt to interpret confusing or general testimony to determine whether a case of invalidity has been made out, particularly at the summary judgment stage.").  For this reason, the Court denies Extech's motion for summary judgment on the issue of anticipation.

### c. Obviousness

Extech next argues that claims 1, 5, 7, and 13 are obvious in light of prior art.  "A patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."  35 U.S.C. § 103(a).  The Supreme Court has said that in the course of a district court's obviousness inquiry, it must examine "the scope and content of the prior art . . . ; [the] differences between the prior art and the claims at issue . . . ; and the level of ordinary skill in the pertinent art . . . ."  *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966).  In addition, secondary considerations such as "commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented."  *Id.*

Obviousness is a legal question, which is based on underlying determinations of fact.  *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000).  When there are genuine disputes about these underlying facts or about whether they add up to a finding of obviousness, the issue is properly resolved by a jury.  *See R.R. Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1515 (Fed. Cir. 1984).  Because the law presumes that an issued patent is valid, *see* 35 U.S.C. § 282, "it is [Extech's] burden to prove by clear and convincing evidence that the claimed invention would have been obvious in view of the prior art."  *Kahn v. General Motors Corp.*, 135 F.3d 1472,

1480 (Fed. Cir. 1998).

The Court begins by examining the level of ordinary skill in the field of the invention. We look at "factors such as educational level of the inventor, educational level of those who work in the industry which manufactures [standing seam roofing systems], and the sophistication of technology involved." *See Ryko Mfg. Co.* v. *Nu-Star, Inc.*, 950 F.2d 714, 718 (Fed. Cir. 1991). Konvin offers evidence that a person having ordinary skill in the field of the invention has knowledge either of metal manufacturing and design or of polymer manufacturing and design, but not both. *See* Pl. Resp. on Invalidity at 20; Pl. L.R. 56.1 Stmt. of Add'l Facts at 183. It also offers evidence that the inherent differences between metal and polymer manufacturing and design are such that they prevent metal designers from competently designing structures composed of polymers. *See* Konstantin Aff. ¶¶ 5, 23. Based on this evidence, Konvin argues that its invention would not be obvious to the hypothetical person having ordinary skill in the field because Konvin's invention requires knowledge of both metals and polymers, an extraordinarily rare skill set. Extech responds to Konvin's argument, not by contesting its characterization of the person having ordinary skill in the field,[1] but by offering evidence that a person trained in metal manufacturing has knowledge of general engineering principles and that such a person would recognize Konvin's invention as obvious in light of the prior art. *See* LaBoube Aff. ¶ 16.

This dueling expert testimony creates a genuine issue of material fact as to the ordinary skill in the technology of the art. Because we must resolve this factual dispute in favor of

---

[1] Extech's expert contends that a person having ordinary skill in the field is someone who has one year or more experience in roofing, glazing, or system design or construction.

Konvin, the non-moving party, we assume that a person having ordinary skill in the art is someone with some experience in metal manufacturing or polymer manufacturing and that this person has little understanding of the manufacturing requirements of the other field.

The other two *Graham* factors can be treated as one related factor. *See Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 664-65 (Fed. Cir. 2000). The Court first determines what prior art is "reasonably pertinent to the particular problem with which the invention was involved," *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1535 (Fed. Cir. 1983), and then compares the relevant prior art to the claims at issue and identifies any differences. *See Ryko*, 950 F.2d at 717. If all of the elements of the patent in question are contained in references found in the prior art, "the relevant inquiry for determining the scope and content of the prior art is whether there is a reason, suggestion, or motivation in the prior art or elsewhere that would have led one of ordinary skill in the art to combine the references." *Ruiz*, 234 F.3d at 664-65. That suggestion may come from "the teachings of the references themselves and, in some cases, from the nature of the problem to be solved." *In re Gartside*, 203 F.3d 1305, 1319 (Fed. Cir. 2000).

The parties seem to agree that the scope and content of the relevant prior art includes all known standing seam roofing systems, regardless of whether those systems employ metal panels. *See* Def. Mem. on Invalidity at 14-15; Pl. Resp. on Invalidity at 17-18. The parties also seem to agree – or at least Konvin does not dispute – that all of the elements in the claims at issue are found in references contained in the prior art. *See* Def. Mem. on Invalidity at 15; Pl. Resp. on Invalidity at 18-19. Where the parties disagree is on the question of whether there was some teaching or suggestion "in the prior art or elsewhere that would have led one of ordinary skill in the art to combine the references." *Ruiz*, 234 F.3d at 664-665. Specifically, the parties dispute

whether there was some motivation or suggestion in the prior art to use top flanges that extend the full length of the base of the clip in standing seam glazing panel systems.

The motivation, suggestion or teaching to combine prior art references "may come explicitly from statements in the prior art, the knowledge of one of ordinary skill in the art, or in some cases, the nature of the problem to be solved." *In re Kotzab*, 217 F.3d at 1370. "In addition, the teaching, motivation or suggestion may be implicit from the prior art as a whole, rather than expressly stated in the references." *Id.* "The test for an implicit showing is what the combined teachings, knowledge of one of ordinary skill in the art, and the nature of the problem to be solved as a whole would have suggested to those of ordinary skill in the art." *Id.*

In *Kotzab*, the patent application involved "an injection molding method for forming plastic articles." *Id.* at 1367. The invention helped solve the problem "of providing optimal temperature control for an injection molding method to ensure the quality of the final product on the one hand, and achieving optimally short molding cycle times on the other hand." *Id.* In short, the patent allowed a plastic-maker to maintain the temperature of multiple plastic molds – an important requirement when making plastics – using a sensor that monitored the temperature of only one mold. *Id.* at 1367-68. Prior art disclosed a sensor to control the temperature of an injection mold as well as a system for controlling the temperature of a number of different molds. *Id.* at 1370. The prior art did not, however, disclose the "idea of a single sensor controlling multiple valves." *Id.* at 1371. The Board of Patent Appeals held that the invention was obvious, but the Federal Circuit reversed. *Id.* at 1371-72. It said that despite the simplicity of the technology, the Board made no finding that a person having ordinary skill in the art would have been motivated to combine the prior art elements in the manner claimed by the patent. *Id.*

at 1371.

    In *Gartside*, the patent application involved "cracking processes, *i.e.*, processes that
generate low molecular weight, purified hydrocarbons of desired molecular composition by
breaking down impure, high molecular weight hydrocarbon feed oil." 203 F.3d at 1307. The
application claimed a catalytic cracking process that applied a "quench" after primary separation
of the cracking particles. *Id.* at 1320-21. The quench solved the problem of hot particulate
solids continuing to crack after the reaction had been completed. *Id.* A single piece of prior art
disclosed all but one of the claim limitations at issue. *Id.* at 1319. The missing limitation was
that the patent accomplished cracking by a thermal rather than by a catalytic method. *Id.*
Another patent disclosed this missing limitation by teaching that the claimed quenching
apparatus could be used in catalytic cracking processes as well as in a thermal cracking process.
*Id.* As a result, the court upheld the Board of Patent Appeals' finding of obviousness. *Id.* at
1320.

    Extech maintains that references in the prior art and the nature of the problem to be
solved would have motivated a person having ordinary skill in the field to invent a standing seam
roofing system that uses top flanges that extend along the length of the base of the clip. It points
to the following language in the patent of a metal standing seam roofing system that employs
metal seam flanges held in place by metal top flanges: "With the terminus of the members 126
so engaged, the edges of the panels 125 are restricted against upward movement." *See* U.S. Pat.
No. 5,737,892, col. 7. It also points to language in the patent of another standing seam roofing
system, which says that it can be used with panels made out of "metal, plastic, ceramics, and
concrete."

The Court disagrees with Extech that these teachings establish obviousness by clear and convincing evidence. Unlike the prior art in *Gartside*, which specifically explained that quenching could solve the problem of excessive cracking in thermal and catalytic reactions, the prior art in this case does not explain how an inventor could combine the prior art's references to solve the problem at issue. Though the prior art reveals that top flanges like the ones in the '024 patent can be used to restrict upward movement, it does not instruct that these flanges provide significantly more resistance to wind uplift than flanges that only extend half the distance of the base of the clip.

It may be that a person having ordinary skill in the field would find it obvious that a top flange's extra length provides greater resistance to wind uplift, but Extech has not offered evidence – in the form of expert testimony or otherwise – establishing that this is true. The Federal Circuit cautions against finding patents obvious simply because they appear technologically simple, *see Kotzab*, 217 F.3d at 1371, and the Court declines to do so here.

Extech also argues that the motivation to combine the prior art's references existed in the nature of the problem to be solved. *See Ruiz*, 357 F.3d at 1276; *Pro Mold v. Great Lakes Plastics*, 75 F.3d 1568, 1573 (Fed. Cir. 1996). In *Pro Mold*, the Federal Circuit held that a patent was obvious where the invention combined an elegant baseball card holder and stand with a card holder that fit perfectly around the edges of a baseball card. *Pro Mold*, 75 F.3d at 1571. The invention allowed a collector to store the card in a box set when the card was not on display. *Id.* The court said that the size of the baseball card provided the motivation to combine the elements of the prior art, because "a card holder no larger than necessary clearly was desirable in order to enable the card holders to fit in a set box." *Id.* at 1573.

In *Ruiz*, the patented invention was a method for stabilizing sagging foundations. *See*

*Ruiz*, 357 F.3d at 1272. A contractor drilled a heavy screw into the ground until it would no

longer turn and then attached the screw to a metal bracket. *Id.* The metal bracket was then

attached to the bottom corner of a house or building to provide extra support. *Id.* Prior art

disclosed two similar methods for providing foundational support. *Id.* at 1273. One method

used a concrete haunch in place of the metal bracket, and another method used a push pier

instead of a screw. *Id.* The trial court, after conducting a bench trial, held that the patent was

obvious in light of the prior art, and the Federal Circuit affirmed. *Id.* at 1274. The appellate

court agreed that the motivation to combine these elements stemmed from the nature of the

problem to be solved, given that "[t]he problem [was] the same: how to underpin an unstable

foundation of an existing building." *Id.*

Extech argues that, as in *Pro Mold* and *Ruiz*, the nature of the problem to be solved by

other patented roofing systems would have motivated an inventor to determine how they

addressed similar wind uplift problems. Extech has failed to establish this proposition such that

summary judgment is appropriate. As discussed earlier, Extech has not offered evidence that a

person having ordinary skill in the field, having examined these systems, would recognize that

the top flanges extending the full length of the base of the clip provide significantly greater

resistance to wind uplift than flanges extending half that distance. Unlike in *Ruiz*, where the

court found that inventors knew that a screw and metal bracket system would work to stabilize a

house, there is no evidence that a person having ordinary skill in the field knew that the flanges

in the '024 patent could form the basis of a hurricane resistant glazing panel system. To the

contrary, Konvin has offered evidence that those skilled in metal roofing systems know little

18

about designing polymeric structures.

Absent evidence as to "the specific understanding or principle within the knowledge of a skilled artisan that would have motivated one with no knowledge of [Konvin's] invention to make the combination in the manner claim," *see Kotzab*, 217 F.3d at 1371, summary judgment in favor of Extech is improper.

This conclusion is further supported by Konvin's evidence of so-called secondary considerations, including the invention's immediate commercial success, which is mostly due to the fact that the Konvin system is the only hurricane resistant glazing panel system on the market. *See* Konstantin Aff. ¶¶ 8-11.[2] Extech does not dispute that these facts are evidence of secondary considerations favoring a finding of non-obviousness. Rather, it moves to strike the evidence as inadmissible, arguing that the relevant parts of the Konstantin affidavit contain inadmissible hearsay and are not based on personal knowledge.

The Court declines to strike the evidence. First, the specified paragraphs of the affidavit do not contain any hearsay. Second, as the general partner of Konvin with twenty years of experience in the skylight business, Konstantin has personal knowledge of the commercial

---

[2]    8.    [B]efore the invention of '024 patent, [sic] no one made a standing seam glazing panel roof system that could withstand the tolerances required by many of these new codes.

9.    There was a growing need for a plastic glazing panel system that could withstand high negative loading, but that would allow for the advantages of plastic – including translucence. This need was met by the invention of the '024 patent.

10.    Once the system embodied in the '024 patent was rolled out, it became enormously successful[] and now dominates the market.

11.    One of the reasons for this success is the failure of others to replicate the performance characteristics of the clip of the '024 patent.

Konstantin Aff. ¶¶ 8-11.

success of his own invention and the competing products in the market in Florida.  *See Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 265 (2d Cir. 1995) (holding that a president of a company has personal knowledge of his business sufficient to make him eligible under Rule 701 to testify about the company's earnings).

## 2.     Infringement

Extech has moved for summary judgment on Konvin's infringement claim, arguing that no jury reasonably could find that Extech's system infringes on the '024 patent either literally or under the doctrine of equivalents.  Konvin has responded by filing a cross motion for summary judgment, contending that no jury reasonably could find that Extech's system does not infringe on claims 1, 13, and 15 of the '024 patent.  To prove literal infringement, the patentee must prove that the accused device contains each limitation of the asserted claim.  *Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002).  "Infringement under the doctrine of equivalents requires the patentee to prove that the accused device contains an equivalent for each limitation not literally satisfied."  *Id.*

### a.     Claim 1

Extech argues that it is entitled to summary judgment of non-infringement on claim 1 because its system does not possess the following limitations or their equivalents:  seam flanges that "bear flush against the web bearing surfaces continuously therealong between the top flange and base of the clip"; "a top flange on the retention clip abutting the top sides of [the seam flanges]"; a central web with a height that "substantially matches" the height of the exterior faces of the seam flanges; and a "retention clip . . . having a base for being secured to the purlins."

Extech argues that its system does not possess seam flanges that "bear flush against the

web bearing surfaces continuously therealong between the top flange and base of the clip"
because its system has a gap or space between the top flange and upper surface of the seam
flange. This, according to Extech, means the seam flanges cannot extend continuously, or the
full distance, between the top flange and the base of the clip. Konvin responds that Extech's
construction of the phrase "continuously therealong between the top flange and base of the clip"
is erroneous and also contends that Extech's system has no gap.

The Court agrees with Extech's construction of the phrase in dispute. Though Konvin
argues that "Extech provides no reasonable support for such a construction," Konvin provides
the Court with no viable alternative. The Court adopts Extech's construction, which appears
eminently reasonable. A person having ordinary skill in the field would understand the word
"continuously" to modify the word "between" (just as "continuously" modifies "between" earlier
in the claim), so that the limitation requires seam flanges to extend the full distance between the
top flanges and the base of the clip. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir.
2005) ("[T]he ordinary and customary meaning of a claim term is the meaning that the term
would have to a person of ordinary skill in the art in question at the time of the invention.").

Even given this construction, however, there is a genuine issue of material fact as to
whether Extech clips bear flush over the entire distance of the central web. Extech concedes that
its gap is either .055 or .075 inches, depending upon the particular installation, and Konvin has
offered evidence that on hot summer days, Extech's panels expand more than .1 inches. *See*
Konstantin Aff. ¶ 25. If a jury believed this evidence, it reasonably could find that Extech's
seam flanges bear flush against the central web continuously between the top flanges and the
base of the clip. Extech's expert denies that its panels expand that much in warm temperatures,

*see* Second Voegele Aff. ¶ 24, but the Court cannot resolve this disagreement on a motion for summary judgment.

This factual dispute is sufficient to deny Konvin's motion for summary judgment because viewing the facts in the light most favorable to Extech, its system does not possess a limitation of claim 1. This does not entitle Extech to summary judgment, however, because viewing the facts in the light most favorable to Konvin, Extech's system has no gap during warm temperatures and therefore possesses the limitation.

Extech next argues that its system does not have "a top flange on the retention clip abutting the top sides of [the seam flanges]" or a central web with a height that "substantially matches" the height of the exterior faces of the seam flanges. For the reasons discussed above, Konvin has offered evidence that Extech's seam flanges touch the top flanges of its retention clip in warm temperatures. Consequently, a jury reasonably could find that Extech's system has "a top flange on the retention clip abutting the top sides of [the seam flanges]" and a central web with a height that substantially matches the height of the exterior faces of the seam flanges.

That leaves the question of whether the retention clip in Extech's system has a base for being secured to the purlins. Extech contends that its clips do not literally possess a base for being secured to the purlins, because the base of its clips is not screwed directly on to the purlins but is able to slide back and forth (about an inch or so) in a narrow channel of a "mounting member." Extech argues that this channel allows the base of its clips to move significantly. Konvin responds that – regardless of this ability to move – the base is still secured because its movement is limited.

During the April 6, 2005 claim construction hearing, the Court held that the word

22

"secured" means "fastened in place," though still having some capacity for "movement or play." Apr. 6, 2005 Tr. at 45. It is not for the Court to determine whether an object is secured if it can move an inch or so. We simply conclude that a jury reasonably could find that Extech's base is secured.[3]

Because there is a genuine issue of material fact as to whether Extech's system infringes on claim 1, the Court denies both parties' motions for summary judgment. We note, in addition, that Konvin has moved for summary judgment of infringement on dependent claims 5 and 7, which incorporate the limitations of claim 1. We deny this motion for the same reasons discussed above.

### b.    Claim 13

Extech next argues that it is entitled to summary judgment of non-infringement on claim 13 because its system does not literally, or under the doctrine of equivalents, possess

> a top flange on the retention clip abutting the top sides of each of said adjacent seam flanges . . . with a central web having a predetermined height to position the top flange to engage tightly against the top sides of the adjacent seam flanges so that said engagement provides the primary resistance against pull forces. . . .

'024 patent, col. 13, lines 41-51. It also argues that its system does not literally, or under the doctrine of equivalents, possess an "inverted U-shaped" batten. Konvin responds that it is entitled to summary judgment on this claim because Extech concedes that the top flanges on its system "abut" the seam flanges in windy conditions and because Extech's batten is U-shaped.

The first question is whether an accused structure infringes on a claim if it possesses the

---

[3] Konvin alleges that Extech's system infringes on a nearly identical limitation in claim 13. *See* '024 patent, col. 13, lines 29-33 ("at least one retention clip . . . for being secured to the rafters." Extech has moved for summary judgment of non-infringement on this limitation. The Court denies Extech's motion on that limitation for the same reasons explained in this section.

claim's limitations under some conditions but not under normal conditions. Federal Circuit precedent suggests that the answer to the question depends on what the particular claim requires. Absent some indication to the contrary, however, a structure infringes if it only periodically possesses the claim's limitations. *See, e.g., Fantasy Sports Properties, Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1117-18 (Fed. Cir. 2002); *Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 622-23 (Fed Cir. 1995); *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1555-56 (Fed. Cir. 1995); *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 19-20 (Fed. Cir. 1984).

In *Bell*, the patent claimed a computer system that assigned each packet of information "a spanning tree" along which the packet traveled to its destination. 55 F.3d at 617. The defendant's system used this method but also allowed the packet to make mid-course corrections. *Id.* at 622. The Federal Circuit reversed a district court's summary judgment ruling in favor of the defendant, explaining that "an accused product that sometimes, but not always, embodies a claimed method nonetheless infringes." *Id.* at 622-23.

In *High Tech*, the plaintiff's patent was a hand-held endoscope, described as "[a] small video camera . . . contained within a thin, tube-shaped device that can be placed inside a patient's mouth." 49 F.3d at 1553. The claim at issue required the camera to be "rotatably coupled" inside of the tube. *Id.* The defendant's device included a video camera that did not rotate within its housing but, instead, was fixed within the housing by two small screws. *Id.* The camera did not need to rotate, the defendant argued, because software allowed the dentist to rotate the image on the viewing screen. *Id.* Though the district court held that the defendant's product infringed because the screws could be loosened to allow the camera to rotate, the Federal

24

Circuit reversed. *Id.* at 1555. It held that a device does not infringe "simply because it is possible to alter it in a way that would satisfy all of the limitations of a patent claim." *Id.* The court cautioned, however, that "if a device is designed to be altered or assembled before operation, the manufacturer may be held liable for infringement if the device, as altered or assembled, infringes a valid patent." *Id.* at 1556 (citing *Paper Converting Mach.*, 745 F.2d at 19).

These cases suggest that where, as here, the defendant creates a structure that possesses a claim's limitations only some of the time, the device infringes, particularly where the defendant intends the structure to take on that configuration. Indeed, the Extech system is analogous to the infringing system in *Bell*, which only used the patented method some of the time, and the hypothetical structure in *High Medical*, which described a device which an inventor designed to be altered to possess all of a claim's limitations.

Extech argues that the predetermined height language indicates that claim 13's limitation requires abutting all of the time, but the Court disagrees. The limitation does not preclude a system with top flanges that are positioned slightly above the seam flanges, as the top flanges would still "engage tightly against . . . the seam flanges . . . so that said engagement [would] provide[] the primary resistance against pull forces." In other words, the engagement could – consistent with the plain meaning of the limitation – occur only during a wind gust. Claim 13 is not specifically limited to full-time abutting or engagement.[4]

---

[4] The Court also rejects Extech's argument that claim 13 requires full-time engagement because the '024 patent recites stiff or preloaded panels. Konvin's expert discussed preloading in the context of explaining the novelty of claim 15, the only claim that contains the stiffening language. *See* Schmid Aff. at 13.

Extech concedes that it makes a device with top flanges that abut and engage the seam flanges in windy conditions. It further concedes that the device is intended to operate this way. Consequently, no jury reasonably could find that Extech's product does not literally possess this limitation.

Extech argues that it is nevertheless entitled to summary judgment of non-infringement on claim 13 because its product does not have "batten members of [an] inverted U-shape." Rather, Extech contends, its batten members are an inverted "M-shape" because they have a thin plastic fin or spline that extends into the middle of its retention clip. Konvin responds that Extech's spline "does not take the Extech batten outside of literal infringement since the elements of the U-shape are literally present."

The meaning of inverted U-shaped in this claim – like the language of most patents – is best understood by examining the specification. *See Phillips*, 415 F.3d at 1315. The '024 patent first employs this phrase in the context of describing figures 1 and 3, both of which illustrate a batten that has nothing depending from the middle. *See* '024 patent, col. 6, lines 38-40 ("The batten 22. . . is of an elongated inverted U-shaped form having an interior channel . . . ."). The specification later describes a batten with a depending tongue, but it does not use the phrase "U-shaped" to describe it. *See id.,* col. 11, lines 18-23. Rather, the specification distinguishes the previously described batten member as follows, "The illustrated batten member 70 is generally in the shape of the batten member 22 in the sense that it is an inverted channel-shaped member with depending legs 42; but the batten member 70 has a central, depending tongue." The Court concludes that the different descriptions of the two batten members would instruct a person having ordinary skill in the field that the term "inverted U-shaped" describes only batten 22's

26

shape: two vertical portions connected by a horizontal portion, with nothing depending from the horizontal portion. Given this construction, it is clear that Extech's product does not possess this limitation, because it has something depending from the horizontal portion, namely, a depending fin or spline in the middle of the batten's channel.

Extech also contends, quite reasonably, that Konvin is barred by the disclosure-dedication rule from arguing that Extech's batten satisfies this limitation under the doctrine of equivalents. The disclosure-dedication rule provides that "subject matter disclosed but not claimed in a patent application is dedicated to the public." *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1106 (Fed. Cir. 1996). "The . . . rule limits application of the doctrine of equivalents . . . based on actions of the patentee during prosecution evincing a surrender or dedication of subject matter." *Toro Co. v. White Consol. Indus., Inc.*, 383 F.3d 1326, 1331 (Fed. Cir. 2004).

Extech maintains that Konvin disclosed a batten with a depending flange or tongue in the patent specification but failed to claim it as a limitation in claim 13. For this reason, Extech contends that Konvin dedicated this type of batten to the public. The Court need not resolve whether the disclosure-dedication rule is actually applicable in this case, because Konvin does not respond to this argument in its brief. As a result, it is deemed to have conceded the point. The Court grants Extech's motion for summary judgment of non-infringement on claim 13 and denies Konvin's motion for summary judgment of infringement on claim 13.

### c.     Claim 15

Extech next argues that it is entitled to summary judgment of non-infringement on claim 15 because its system does not have "a top flange which extends integrally transverse to the base length on the top of the central web portion continuously across the web portion." Konvin

27

responds that it is entitled to summary judgment on this claim because Extech's system possesses each of claim 15's limitations.

The Court previously construed the word "integrally" in this phrase to mean "part of a complete unit," though not necessarily one single piece. Apr. 6, 2005 Tr. at 44. The Court now construes the term "transverse to" to indicate "a direction substantially perpendicular to."[5] This means that claim 15 requires a top flange that extends both on top of and continuously across the central web portion, in a direction substantially perpendicular (i.e., at right angles) to the plane of the web.

Given this construction, no jury reasonably could find that Extech's system literally possesses this limitation, as Extech's clip has a small gap between the right and left portions of the top flange. In other words, the top flange is not continuous in the relevant direction across the middle of the retention clip. Though Konvin maintains that this limitation requires only that a top flange extend continuously along "the full length of the clip," this interpretation would give no meaning to the words "transverse" or "across," which require the top flange to pass over the middle of the clip.

Extech also contends that Konvin is barred by the doctrine of prosecution history estoppel from arguing that the Extech system infringes on this limitation under the doctrine of equivalents. Extech points out that the limitation at issue was added as part of a narrowing amendment to the '024 patent. The presence of a narrowing amendment in the prosecution

---

[5] Konvin's expert, at his deposition, conceded that the word "transverse," for purposes of this claim, means at right angles to the plane of the central web. *See* Extech Infringement Ex. R at 13; Schmid Dep. at 187-189. This is consistent with the dictionary definition of transverse. *See* Webster's Third Int'l Dictionary 2431 ("to lie or pass across").

history ordinarily indicates that "the patentee surrendered all subject matter between the broader and narrower language." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740 (2002). Konvin offers no reason why the doctrine of prosecution history estoppel should not apply in this case. Instead, it simply reiterates its argument – which the Court has already rejected – that the top flange of the Extech clip extends continuously across the web. As a result, it has failed to satisfy its burden of demonstrating why the narrowing amendment should not result in prosecution history estoppel. *See Walter-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 33-34 (1997) ("[W]e think the better rule is to place the burden on the patent holder to establish the reason for an amendment required during patent prosecution.").

Because no jury reasonably could find that Extech's system infringes on claim 15 of the '024 patent either literally or under the doctrine of equivalents, the Court grants Extech's motion for summary judgment of non-infringement on claim 15 and denies Konvin's motion for summary judgment of infringement on this claim.[6] We note, in addition, that Konvin has moved for summary judgment of infringement on dependent claim 20, which incorporates the limitations of claim 15. We deny this motion for the same reasons discussed above.

## Conclusion

For the reasons stated above, the Court denies defendant's motion for summary judgment of invalidity as to claims 1, 5, 7, 13, 15, 20, and 27 of the '024 patent [docket no. 70] but grants the motion as to claim 21. The Court also denies defendant's motion for summary judgment of non-infringement of the '024 patent [docket no. 74] as to claim 1 but grants the motion as to

---

[6] Extech has also moved for summary judgment on the issue of infringement as it pertains to claim 27, a dependent claim of independent claim 15. Because claim 15 does not infringe on the '024 patent, neither does claim 27.

claims 13 and 15.  The Court denies plaintiff's motion for summary judgment of infringement

[docket no. 78].  The case is set for a status hearing on September 11, 2006 at 9:30 a .m. for the

purpose of setting a trial date.


_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 21, 2006